## THOMAS et ux. v. WILSON.

No. 35239.   Nov. 5, 1952.

Rehearing Denied Jan. 6, 1953.

*252 P. 2d 126.*

Hardy & Hardy, Tulsa, for plaintiffs in error.

John R. Woodard and Kriete & Kriete, Tulsa, for defendant in error.

· O'NEAL, J. This action was brought by Wilbur G. Wilson, administrator of the estate of Pearl O. Wilson, deceased, against A. H. Thomas and Clara M. Thomas, being cause No. 81116, district court of Tulsa county, Oklahoma, to enjoin defendants from conveying certain real property, encumbering or disposing thereof, unless and until a certain judgment obtained by plaintiff against defendant, A. H. Thomas, is fully satisfied; that the deeds executed by A. H. Thomas to his wife, Clara M. Thomas, covering the property described in plaintiff's petition be vacated and set aside and A. H. Thomas be adjudged to be the owner of said real property, subject to the lien of plaintiff's judgment against A. H. Thomas in cause No. 77187, district court of Tulsa county, Oklahoma.

The parties will be referred to as they appeared in the trial court.

It appears from the plaintiff's petition that on February 8, 1950, in an action referred to as No. 77187 in the district court of Tulsa county, Oklahoma, the plaintiff obtained a judgment against the defendant A. H. Thomas, in the sum of $3,000, and the judgment became final and became a lien on all property belonging to the defendant A. H. Thomas, situated in Tulsa county; that an execution was issued on said judgment and was returned unsatisfied, with the endorsement marked "no property found"; that the judgment was listed with the county assessor under the Intangible Tax Law; and that the tax when due would be paid thereon. That immediately prior to the rendition of said judgment in Cause No. 77187, the defend-

ant A. H. Thomas conveyed and assigned all his property, both real and personal, to the defendant, Clara M. Thomas, his wife; that said conveyances included farm lands and city property, mineral interest, bank accounts and an automobile, thereby divesting defendant A. H. Thomas of all assets upon which plaintiff could levy to satisfy said judgment; that the conveyances and assignments were entered into collusively by said defendants and were made without any consideration and with the purpose of defeating the collection of said judgment. Claiming the conveyances and assignments are fraudulent and void and that the defendant A. H. Thomas is the real owner of the various properties described, plaintiff prays that his judgment lien be foreclosed to satisfy said judgment.

The defendants seek to defeat a recovery by plaintiff under the following allegations of their answers: That in case No. 19362, styled, "In the matter of the estate of Pearl O. Wilson, deceased," pending in the county court of Tulsa county, in which proceeding this plaintiff was the administrator, an order was entered decreeing heirship and closing said estate save and except that the administrator was authorized to prosecute cause No. 77187, referred to in plaintiff's petition, to a final judgment, and to account for any recovery obtained therein; that plaintiff, under said order, is not authorized to maintain the present action.

Defendants further plead that a certain action was filed in the district court of Okmulgee county in which the administrator of the estate of Pearl O. Wilson, deceased, was plaintiff, and A. H. Thomas was defendant, said cause being designated No. 22286, and in which case plaintiff recovered a judgment against the defendant A. H. Thomas, which judgment said defendant paid in full; that after satisfying said judgment in case No. 22826, and before the filing of the action in case No. 77187, the defendants, A. H. Thomas and

Clara M. Thomas, in consideration of marriage, entered into a written antenuptial contract and that all of said conveyances and assignments of real and personal property made by A. H. Thomas to his wife were in pursuance to said antenuptial agreement. A copy of this agreement is attached to the answer.

Defendants by an amendment to said answer allege that the county judge of Tulsa county, in case No. 19362, supra, entered an order approving a contract entered into by the administrator of the estate of Pearl O. Wilson, deceased, with counsel for plaintiffs in cause No. 77187 covering the payment of a contingent fee to counsel upon a recovery in said cause, and that said attorneys are necessary and indispensable parties to the present action. Also, that the heirs of Pearl O. Wilson, deceased, to wit: Wilbur G. Wilson and Peggy Wilson, are necessary and indispensable parties to the present action.

By reply plaintiff denied that an antenuptial agreement was entered into by defendants and alleged that the purported agreement was concocted and signed by defendants long after the purported date thereof and subsequent to their marriage, and was entered into to defraud and defeat the collection of plaintiff's judgment in said cause No. 77187.

Upon these issues the trial was had without the intervention of a jury. The trial court found in cause No. 77187 that plaintiff, on February 8, 1950, obtained a judgment against the defendant A. H. Thomas in the sum of $3,000; that after said judgment became final an execution was issued thereon and returned unsatisfied; and that no part of said judgment has been paid.

The court further found from the evidence that on or about the 28th day of January, 1950, said defendants filed of record in the office of the county clerk of Tulsa county, Oklahoma, a certain deed made by the said A. H. Thomas as grantor to the said Clara M. Thomas,

as grantee, wherein and whereby the former ostensibly conveyed to the latter the city lots described in the petition; that said deed was not actually executed and delivered until the month of January, 1950, although it purports to bear the date of March 10, 1948, which was not the true date of the execution of said deed; that the court further found that the defendants filed of record a deed made by the said A. H. Thomas and the said Clara M. Thomas as grantors to the said Clara M. Thomas as grantee wherein and whereby the said A. H. Thomas ostensibly conveyed to the said Clara M. Thomas the farm lands described in plaintiff's petition.

The court further found from the evidence that the deeds above referred to were made, given and delivered with the intent on the part of the defendant A. H. Thomas, to hinder, delay and defraud the plaintiff in collecting the judgment hereinabove mentioned; that such deeds were given and placed of record as stated without any lawful consideration being paid therefor by the said Clara M. Thomas; that the antenuptial agreement pleaded by the defendants was not sufficient in law to justify the validity of said deeds insofar as the rights and remedies of the plaintiff herein may be concerned; that the parcels, tracts and lots of land purportedly conveyed by said deeds at and prior to the time of the rendition of the judgment in said cause No. 77187 were and still are properties belonging to the defendant A. H. Thomas, and that said judgment became a lien on said lands from and after the rendition and docketing thereof and that as a matter of law the plaintiff has the right to proceed by execution to subject said lands to the payment of said judgment unless the same be satisfied prior to execution being levied on said lands or any portion thereof; that said deeds are found to be fraudulent and void under the law insofar as the rights of plaintiff are concerned, and he is declared to have the right to subject said lands or the necessary portion thereof subjected to the payment of said judgment as by

law provided; the court further found that in attempting to make and execute said deeds to his said wife and in committing other acts in transferring and assigning properties of the said A. H. Thomas, he rendered or attempted to render himself insolvent in order to defeat the collection of said judgment, when in fact he is still the owner of the properties hereinabove described and that as a matter of law said properties may be subjected to payment of said judgment as by law provided and the sheriff of Tulsa county, Oklahoma, is authorized and directed, if process should be placed in his hands and in case said judgment shall not have been previously satisfied in full, to proceed to cause said judgment to be paid by levying proper process on said properties or a sufficient portion thereof all to the end that said judgment be paid in full and said Clara M. Thomas was enjoined from claiming or asserting any interest or title in and to said properties or any of them contrary to the provisions of this judgment.

The record with reference to the various cases referred to in the pleadings of the respective parties disclose that in the case of Thomas et al. v. Wilson, Adm'r, 199 Okla. 308, 185 P. 2d 473, Mr. Thomas represented Pearl O. Wilson, his first wife's sister-in-law, in certain business transactions, but did not disclose to her material facts pertinent thereto, and the court held that certain conveyances made by her covering mineral interest should be vacated and set aside.

Pearl O. Wilson having died, the action was brought by her husband, Wilbur G. Wilson, as administrator of her estate. The importance of the reference to said proceeding arises out of the assertion of the defendant A. H. Thomas, that having paid the money judgment rendered against him in that case in the approximate sum of $2,300, that his complete obligations and liabilities arising out of the proceedings had in the estate of Pearl O. Wilson, deceased, probate No. 19362, are at an end; how-

ever, with reference to said probate case we find that upon approval of the administrator's final account the court found that the administrator of the estate of Pearl O. Wilson, deceased, had filed in the district court of Tulsa county, Oklahoma, said cause No. 77187, in which the administrator sought to recover damages from the defendant Thomas, claiming he fraudulently defended the action in Thomas v. Wilson, Adm'r, supra, thus burdening the estate of Pearl O. Wilson, deceased, and damaging it in the sum of $5,519.27 actual damages. The county court therefore entered an order in probate No. 19362, authorizing the administrator to continue the prosecution of cause No. 77187 to final conclusion "and if any recovery is made in said lawsuit the administrator is ordered to account therefor in due time."

Although many grounds are urged upon us to reverse the trial court's findings of fact and conclusions of law, these grounds are merged in defendant's contention that the evidence discloses that defendants entered into a written antenuptial agreement and that the conveyances and assignments made by the defendant A. H. Thomas to his wife were made pursuant to said antenuptial agreement, and that, therefore, the court's judgment vacating and setting aside said conveyances is not sustained by the evidence. This assertion requires an examination of the entire record for, as we have often declared—upon appeal of a case of equitable cognizance this court will weigh and consider the evidence and will affirm the finding and judgment of the trial court unless such finding and judgment are against the clear weight of the evidence.

A. H. Thomas' first wife was a sister of Wilbur G. Wilson, administrator in the present action. The wife died in 1933, and thereafter, on January 31, 1948, Mr. Thomas married Clara, his present wife. The judgment rendered in cause No. 77187 was rendered against A. H. Thomas only. Mrs. Thomas was a party defendant in the action but she was dismissed therefrom upon her demurrer. This judgment was entered on February 8, 1950, and upon execution issued thereon was returned "no property found." The present action was filed on September 20, 1950.

Epitomizing the conceded and disputed facts we find that the defendant A. H. Thomas married his present wife, Clara, on January 31, 1948. He had a son by his former marriage and she had two daughters by her former marriage. Both defendants testified that pursuant to their agreement of marriage, the defendant A. H. Thomas agreed to convey to Mrs. Thomas, then Mrs. Beddoe, all of his property, real and personal.

This agreement recites that A. H. Thomas will convey to Clara M. Beddoe all of his real estate, personal property, life insurance policies, mortgages, producing and nonproducing mineral rights, except a few small fractional parts in nonproducing mineral rights which he may convey to his son by a former marriage. Thereafter, and under purported deeds dated March 10, 1948, and December 24, 1949, A. H. Thomas conveyed all of the real property to Mrs. Thomas referred to in the judgment, supra. Although the deeds as indicated bore dates of March 10, 1948, and December 24, 1949, these dates were not the true dates of the execution of the deeds as the deeds were not actually executed until January, 1950, and were actually recorded on January 28, 1950.

The record further discloses that Mr. Thomas, as of February 27, 1948, delivered to the Mid-Continent Petroleum Corporation a division order in which he warranted title to certain mineral interest in producing properties. These royalty interests were transferred to his wife under date of March 3, 1950, with instructions that the royalty checks be delivered to A. H. Thomas at his office at 615 Ritz Building in Tulsa, Oklahoma. Approximately

seven royalty checks of the Mid-Continent Petroleum Corporation issued between December 31, 1949, and April 12, 1950, were endorsed by the defendant, A. H. Thomas; checks from May 12, 1950, to December 12, 1950, where purportedly endorsed by Mrs. Thomas; however, on cross-examination Mr. Thomas admitted that the endorsement of Clara Thomas, his wife, on fifteen of these royalty checks did not bear her signature but that the endorsements were in his handwriting. It is further shown that the defendant A. H. Thomas, deposited the proceeds of the royalty checks to the credit of Clara, his wife, in a local bank but under his admission he had Clara's consent to and did draw upon her account at will.

With reference to the farm lands conveyed under the mentioned deed, the evidence discloses that Mr. Thomas assisted in the management of the property in approximately the same manner as he did prior to the purported date of their conveyance. Included in the various conveyances, but not involved in this proceeding, was the conveyance of the homestead of the defendant A. H. Thomas to his present wife. The reasonable value of that property is $18,000.

The evidence is without dispute that Mrs. Thomas had no knowledge of the execution of the deeds referred to or the purported dates thereof. Her first knowledge that the deeds had been executed, as stated by Mr. Thomas, was received by her in January, 1950, at the time the deeds were recorded. She never saw the deeds until the day before the present trial was commenced.

Defendants concede that the antenuptial agreement was not reduced to writing or signed by the parties until three weeks after their marriage. It is also admitted that no money consideration passed from Mrs. Thomas to the grantor covering the conveyances here involved.

Although Mrs. Thomas asserts that she had no knowledge of the existence of any creditors of Mr. Thomas, it is admitted by her that she was a party defendant in cause No. 77187, and that she was served with process of summons, filed a demurrer in said cause and was discharged therefrom. Additional facts and circumstances negative her assertion that she was without knowledge of that litigation.

For reversal of the judgment rendered, defendants contend that unless grantee in conveyances attacked by creditors is guilty of fraud as to creditors, or has knowledge or notice of the creditor's claim, such creditors cannot cancel the conveyances for fraud. A complete answer to defendants' contention here advanced is that the judgment rendered is a general finding that Mrs. Thomas did have knowledge of plaintiff's claim, which finding is supported by substantial evidence in the record.

Defendants next contend that the postnuptial settlement of an antenuptial agreement is but the payment of a debt to a prior creditor who is entitled to the property as against the plaintiff.

Defendants cite in support of their contentions the decisions of this court in Pence v. Cole, 85 Okla. 69, 205 P. 172; Teel v. Harlan, 199 Okla. 268, 185 P. 2d 695; Hoefer v. Probasco, 80 Okla. 261, 196 P. 138, and Owsley v. Owsley, 121 Okla. 259, 249 P. 692. None of these cited cases disclose that the rights of creditors were involved.

In Hoefer v. Probasco, supra, this court held that a lost written antenuptial contract had been established by the evidence in the case, and further held that the contract thus established was so indefinite and uncertain that it could not be construed to affect lands in Oklahoma, subsequently acquired by the parties.

In Pence v. Cole, supra, this court held that an antenuptial contract was entered into in consideration of the

marriage, which contract was signed and was duly recorded in the office of the recorder of Fulton county, Indiana. The only question involved was whether property acquired by the parties after they established a residence in Oklahoma was subject to the prenuptial contract. This court held the parties intended such contract to govern their rights concerning their property in Oklahoma, and found the antenuptial contract to be just and reasonable in that respect.

In Owsley v. Owsley, supra, this court held that the parties in contemplation of marriage agreed that the plaintiff would deed to the defendant certain lands. The parties were married on the 17th day of May, and on June 26th thereafter, the plaintiff deeded the land to the defendant. This court in its opinion quoted with approval the language of the Supreme Court of Kansas, in the case of Supreme Lodge K. of P. v. Ferrell & Stanley, 83 Kan. 491, 112 P. 155, which held:

"In an action by a widow to maintain her rights derived through the execution of a parol antenuptial contract of marriage the contract being executed by both parties thereto the statute of frauds has no application. Such executed contract is valid."

In Teel v. Harlan, supra, the record discloses that Martha Gilbert Teel and John C. Teel were married January 28, 1938. In Feburary, 1941, they signed a written agreement denominated "Contract and Agreement of Ante-Nuptial Property Settlement." This agreement provided in the event of the death of either party after the marriage, the surviving spouse would not claim or receive any part of the separate property of the deceased party. Martha, on John's death, claimed one-half of his estate. John's daughter, by a previous marriage, claimed the entire estate relying upon the antenuptial contract referred to. This court held:

"A statute of frauds which provides that contracts made in consideration of marriage, other than a mutual promise to marry, are invalid unless the same, or some memorandum thereof, be in writing and subscribed by the party to be charged, or his agent, does not mean that no oral agreement made in consideration of marriage, other than a mutual promise to marry, can ever exist for any purpose; such agreement may exist to the extent that it may be made valid by execution or performance after marriage.

"The general rule is that the memorandum in writing of the contract, required by the statute of frauds to be in writing, may be made subsequently to the making of the contract itself and at any time before an action is brought on the contract."

In the latter case, as well as in the cited cases, this court held that "such agreements may exist to the extent that it may be made valid by execution or performance after marriage."

None of these cases involve the rights of creditors, nor do any of them involve a question of fraudulent conveyance. The controversy in each case is limited to the rights of the respective parties entering into the antenuptial agreement, or the rights of their heirs thereto.

As we have heretofore noted, the defendants plead a written antenuptial agreement before marriage, which was claimed to have been reduced to writing prior to marriage, but upon the examination of the defendant A. H. Thomas, he testified that the written agreement was not reduced to writing until three weeks after its purported date. Moreover, no effort was made on his part to convey the properties to his wife until after he was informed by one of counsel for plaintiff that unless he made a settlement of his indebtedness to the estate of Pearl O. Wilson, deceased, that a suit would be filed against him. Neither did Mrs. Thomas know, nor is it contended that she was ever informed of the fact, that he had executed deeds conveying his entire property to her or delivered the deeds to her at any time. In fact, she never saw the deeds until the day prior to

the trial of the present case. Upon this evidence the court found that the deeds were fraudulently made for the purpose of defeating the collection of the judgment in cause No. 77187.

Defendants next contend that plaintiff had no interest or capacity to maintain the present action. We find no merit in this contention.

With reference to the county court's order in case No. 19362, it is disclosed that the administrator of the estate of Pearl O. Wilson, deceased, was not discharged but, on the contrary, the administrator was specifically charged to "***continue his efforts to recover on his claim for damages in district court case No. 77187 pending in the district court of Tulsa county, Oklahoma, and this order shall not be construed as a final closing of this proceeding, but jurisdiction is expressly reserved and retained for the purpose of enabling the administrator to continue the prosecution of said lawsuit to final judgment and if any recovery is made in said lawsuit, the administrator is ordered to account therefor in due time."

Nor do we agree with defendants' contention that the administrator's power and authority ceased after the entry of the judgment in cause No. 77187, and after the return of the unsatisfied execution. Clearly, the order authorized the administrator to take all legal steps necessary to collect the judgment. This he proceeded to do by the proceedings in the present action.

Another contention made by the defendants for reversal is that the administrator, in his individual capacity, his daughter and heir in the probate case, as well as the administrator's counsel in the present action, are necessary and indispensable parties to the present action. This point was raised in the trial court and overruled. We think the ruling was correct. Whatever recovery is had must be distributed to the heirs at law in the probate proceedings. Likewise, counsel fees are charges against said estate. Defendants here are not concerned in the distribution of the assets of said estate, they will be neither harmed nor benefited in the distribution of the assets of said estate.

Defendants also contend that the defendant A. H. Thomas was competent to testify as to his motives and intent as grantor in the conveyances assailed as fraudulent. The record does not bear defendants' contention for it discloses that defendant Thomas was asked: "Did you have in mind at that time attempting to defraud or hinder Wilson from collecting his previous judgment?" To this inquiry he responded: "No." Furthermore, the entire record discloses that the court permitted him to testify as to every essential fact in covering the various transactions involved.

Finally, defendants contend that the suit must be dismissed for the reason that plaintiff did not comply with the Intangible Tax Law. This contention is without merit, for plaintiff's Exhibit 33 in the record discloses that the judgment in cause No. 77187 was listed as intangible personal property with the county assessor.

The evidence, as a whole, reasonably supports the finding of the trial court that the deed purportedly conveying the city property to Mrs. Thomas, bearing date as of March 10, 1949, was not executed on that date; that the deed of the farm lands bearing date of March 24, 1949, did not bear a true date and that the foregoing deeds were never delivered to Mrs. Thomas, and that she had not seen them until the day before the present trial.

We think the findings sustain the court's judgment that the deeds were executed to hinder and delay the collection of plaintiff's judgment.

We further find that the record sustains the trial court's finding of indicia of illegality in that the conveyances were made in anticipation of the enforcement of the judgment debtor's claim; that the transfers were kept

secret as to Mrs. Thomas, as well as to the judgment creditor; that the transfers covered all of the defendant's estate, both real and personal, but that the defendant Thomas continued to control and supervise the properties after the alleged transfers; that the acts and conduct on the part of the defendant Thomas, and the circumstances surrounding the prior and subsequent litigation in which he was a party, indicates a studied attempt to strip himself of all of his property to delay and hinder the judgment creditor. No effort of a debtor to hinder or delay a creditor is more severely condemned by law than an attempt to place his property where he can enjoy it, and at the same time require his creditor to wait his pleasure for the payment of the judgment. Affirmed.

WELCH, CORN, GIBSON, DAVISON, JOHNSON, and BINGAMAN, JJ., concur.